UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| KEVIN VICTOR LLEWELLYN, | : | |
| Plaintiff, | : | No. 3:19-cv-1030 (KAD) |
| | : | |
| v. | : | |
| | : | |
| JOHN ALDI, et al., | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Kevin Victor Llewellyn ("Llewellyn"), currently confined at Carl Robinson Correctional Institution in Enfield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Llewellyn names twelve defendants: John Aldi; Peter Murphy; Angel Quiros; Lieutenants Richardson, Papoosha, and King; Captains Black and Walsh; and John Does 1-4. He alleges that the defendants violated his Fourteenth Amendment rights by providing inadequate notice and an untimely hearing, failing to follow hearing procedures, punishing him for uncharged conduct, and upholding an unlawful disciplinary proceeding; his First Amendment rights by retaliating against him for using the prison grievance procedures; and his Eighth Amendment rights by failing to protect him from an inmate assault and subjecting him to sexual abuse. Llewellyn seeks damages and injunctive relief. The complaint was received on June 28, 2019, and Llewellyn's motion to proceed *in forma pauperis* was granted on July 2, 2019.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Between June 28, 2016 and July 7, 2016, Llewellyn was a pretrial detainee. Doc. No. 1, ¶ 11. On June 28, 2016, Llewellyn was removed from general population and placed in a restrictive housing unit ("RHU"). *Id.*, ¶ 1. He was placed on Administrative Detention pending a disciplinary hearing on charges of threats and Security Risk Group ("SRG") affiliation. *Id.*, ¶¶ 1-2. On June 29, 2016, Llewellyn plead guilty to the charge of threats and received sanctions of seven days in punitive segregation. *Id.*, ¶ 3.

Llewellyn completed his segregation time on July 4, 2016. He did not receive a hearing for SRG affiliation and was not returned to general population. *Id.*, ¶ 4. Sometime later, Disciplinary Investigator Doe 1 asked Llewellyn if he wanted an advocate. Although Llewellyn

2

said he did, he was not permitted to choose his advocate or request witnesses. *Id.*, ¶ 5.

On July 11, 2016, Llewellyn met with Doe 2, the advocate selected for him. When Llewellyn asked to see the evidence against him, Doe 2 stated that he was not at liberty to show him the evidence. *Id.*, ¶ 6. Doe 2 asked Llewellyn to write a statement for the hearing. Llewellyn stated that he could not do so without knowing the reason for the charge. *Id.*, ¶ 7. Doe 2 told Llewellyn that he had gang-related pictures on social media. *Id.*, ¶ 8. Llewellyn then wrote a statement saying that he had no gang-related pictures on Facebook or Instagram, the only social media accounts he had. *Id.*, ¶ 9. Doe 2 refused to interview witnesses for Llewellyn. *Id.*, ¶ 10.

Llewellyn's SRG hearing was held on July 12, 2016. *Id.*, ¶ 12. Before Llewellyn could say anything, Hearing Officer Lieutenant King stated that she had reviewed the evidence before the hearing and was finding him guilty based on that evidence. *Id.*, ¶¶ 13-14. Lieutenant King refused to show Llewellyn the evidence, claiming she did not want him to tell other gang members "how we do our jobs." *Id.*, ¶ 15.

Llewellyn wrote to defendants Aldi and Papoosha about these due process violations but received no response. *Id.*, ¶ 18. District Administrator Murphy denied Llewellyn's appeal, stating that no due process violation occurred. *Id.*, ¶ 19. He also stated that Llewellyn had admitted owning the social media account. Llewellyn claims this was not possible as he never saw any evidence to be able to acknowledge ownership. *Id.*, ¶ 20. He denies any SRG-related conduct. *Id.*, ¶ 21.

On September 19, 2016, Llewellyn again received a disciplinary report for SRG affiliation. *Id.*, ¶ 22. His hearing was held on September 29, 2016, eight business days later.

*Id.*, ¶ 23. At the hearing, Llewellyn complained to Hearing Officer Lieutenant Richardson that the hearing was one day late. *Id.*, ¶ 24. When Lieutenant Richardson stated that he could continue the hearing for two ten-day periods, Llewellyn stated that any continuance had to be documented and requested to see the documentation. *Id.*, ¶¶ 25-26. Lieutenant Richardson documented the continuance at the hearing, rather than before. *Id.*, ¶ 28.

Llewellyn was found guilty on September 29, 2016. *Id.*, ¶ 30. Although the disciplinary process summary report indicates a continuance until October 13, 2016, no other hearing was held. *Id.*, ¶¶ 31-32. Llewellyn complained to Disciplinary Coordinator Doe 3 who told Llewellyn to appeal if he thought his due process rights were violated. *Id.*, ¶ 33. Llewellyn filed an appeal on October 9, 2016. *Id.*, ¶ 34. District Administrator Quiros denied Llewellyn's appeal, stating the hearing was conducted correctly and there was no due process failure. *Id.*, ¶ 35.

On October 14, 2016, Unit Manager Captain Black placed Llewellyn in a cell with inmate Gabriel Vega. *Id.*, ¶ 37. The following day, inmate Vega assaulted Llewellyn. Because Llewellyn defended himself, both inmates received disciplinary reports for fighting. *Id.*, ¶ 38. Shortly after October 15, 2016, Llewellyn learned that inmate Vega was not permitted in the recreation yard with other inmates because he was considered "a danger." *Id.*, ¶ 42. Llewellyn was placed in the cell with inmate Vega five days after he appealed his SRG ticket and after making constant requests to Captain Black to be released from the SRG Program. *Id.*, ¶ 43. He believes the placement was retaliatory. *Id.*, ¶ 44.

Sometime before January 25, 2018, Llewellyn signed renunciation papers to complete the SRG Program. *Id.*, ¶ 45. He was supposed to be released on January 25, 2018. *Id.*, ¶ 46. On

4

February 6, 2018, Llewellyn asked Captain Walsh why he was still in the SRG Program. *Id.*, ¶ 47. Captain Walsh said that John Aldi told her that Llewellyn could not leave the program. *Id.*, ¶ 48.

Aldi said that Llewellyn should have received a disciplinary report for SRG affiliation in August 2017 but did not. He was requiring Llewellyn to serve the additional two months in the program that he would have been required to serve if the disciplinary report had been issued. *Id.*, ¶ 49. Captain Walsh told Llewellyn that he still could receive a disciplinary report. She advised him to serve the two months and "let it go." *Id.*, ¶ 50. On February 13, 2018, at Llewellyn's request, Captain Walsh confirmed in writing what she had told Llewellyn on February 6, 2018. *Id.*, ¶¶ 51-52. Llewellyn interpreted Captain Walsh's statement that he still could receive a disciplinary report as a threat to deter him from grieving the issue. *Id.*, ¶ 53.

Llewellyn served the additional two months in the program and was scheduled for release on March 25, 2018. *Id.*, ¶ 54. In March, Counselor Fiore told Llewellyn that he would not leave the program until April. *Id.*, ¶ 56. Counselor Fiore told Llewellyn that Aldi refused to let him leave because, if he had received a disciplinary report in August 2017, he would have re-started Phase 4 of the SRG Program. *Id.*, ¶ 57. Because Captain Salius had not regressed Llewellyn to re-start Phase 4, Aldi was making Llewellyn serve the additional month he would have served had he re-started Phase 4. *Id.*, ¶ 58. Llewellyn considers Aldi's actions to be taken in retaliation for filing grievances. *Id.*, ¶ 60.

While waiting to be released from the SRG Program, defendant Doe 4 touched Llewellyn sexually while conducting a pat search. *Id.*, ¶ 62. Defendant Doe 4 had acted inappropriately before and Llewellyn had addressed the issue. *Id.*, ¶ 63. Llewellyn reported the incident to the

lieutenant on duty and filed a PREA complaint even though the lieutenant tried to dissuade him from doing so. *Id.*, ¶ 64. Shortly thereafter, Llewellyn was transferred to Cheshire Correctional Institution. *Id.*, ¶ 65.

**Discussion**[1]

**Retaliation**

Llewellyn alleges that Captain Black retaliated against him for filing grievances when Captain Black assigned inmate Vega to Llewllyn's cell. Llewellyn alleges Captain Walsh and Aldi retaliated against him in violation of his First Amendment right to free speech by taking action in response to his filing grievances or to deter him from filing a grievance.

To state a First Amendment retaliation claim, Llewellyn must allege facts establishing three elements: (1) he engaged in protected speech or conduct, (2) the defendants took adverse

---

[1] Llewellyn lists his claims against each of the twelve defendants: (1) Doe 1 denied Llewellyn due process by failing to provide adequate notice of the SRG hearing, refusing to allow him to select an advocate, and refusing to permit him to request witnesses; (2) Doe 2 denied Llewellyn due process by refusing to show Llewellyn the evidence against him, refusing to interview witnesses, and failing to assist in the preparation of a defense; (3) Lieutenant King denied Llewellyn due process by finding him guilty without any evidence of recent gang activity, refusing to show Llewellyn the evidence against him, refusing to allow Llewellyn to defend himself, and failing to conduct the hearing in a timely manner; (4) Lieutenant Papoosha denied Llewellyn due process by participating in his designation as SRG without any evidence of recent gang activity and refusing to release Llewellyn from segregation upon completing of his sanction; (5) District Administrator Murphy denied Llewellyn due process by upholding Lieutenant King's decision; (6) Lieutenant Richardson denied Llewellyn due process by not conducting the hearing within the required time frame and attempting to cover up this impropriety; (7) Doe 3 denied Llewellyn due process by failing to ensure the disciplinary hearing was conducted correctly; (8) District Administrator Quiros denied Llewellyn due process by upholding Lieutenant Richardson's decision; (9) Captain Black retaliated against Llewellyn, subjected him to cruel and unusual punishment, and violated his right to freedom of speech by placing him in the cell with inmate Vega; (10) Captain Walsh denied Llewellyn due process of law and violated his right to freedom of speech when she threatened him with disciplinary action for trying to grieve Aldi's actions and following Aldi's directions; (11) Aldi denied Llewellyn due process of law and violated his right to freedom of speech by refusing to permit Llewellyn to leave the SRG Program, punishing him for uncharged misconduct, and punishing him in retaliation for filing grievances; and (12) Doe 4 violated Llewellyn's Eighth Amendment rights by touching him in a sexual manner.

6

action against him, and (3) a causal connection between Llewellyn's protected conduct and the adverse action. *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" (citation omitted)); *see also Washington v. Afify*, 681 F. App'x 43, 45–46 (2d Cir. 2017) ("[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

Filing grievances and appeals by a prisoner is protected activity. *See Gill v. Pidlypchak*, 389 F.3d 279, 280 (2d Cir. 2004) (filing a grievance is constitutionally protected activity and will support a retaliation claim). Temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation. *Washington*, 681 F. App'x at 46.

Llewellyn alleges that Captain Black assigned him to a cell with inmate Vega five days after he filed his appeal of the September 2016 disciplinary decision. Doc. No. 1, ¶¶ 34, 37. Based on temporal proximity, Llewellyn states a plausible retaliation claim against Captain Black. Llewellyn is cautioned however that, although temporal proximity is sufficient to state a plausible claim, further evidence of retaliatory animus is required to enable a prisoner to survive summary judgment and proceed to trial on a retaliation claim. *Washington*, 681 F. App'x at 46.

Llewellyn alleges that Aldi held him over in the SRG Program because he filed

7

grievances. Unlike his claim against Captain Black, Llewellyn does not allege that he filed any grievances in 2018. He merely assumes a retaliatory motive based on grievances that he filed at an unspecified time in the past. These allegations are conclusory and insufficient to state a plausible retaliation claim against Aldi.

Finally, Llewellyn alleges that, when Captain Walsh confirmed her warning in writing, she cautioned Llewellyn that he could still receive the SRG ticket that had not been issued in August 2017 and underlined the phrases "still receive" and "SRG ticket." *Id.*, ¶ 52. Llewellyn interpreted this as a threat to stop him from grieving the issue. Equally, the language could merely be cautionary. There are no other allegations suggesting that Captain Walsh issued any disciplinary reports, prevented Llewellyn from filing a grievance, or took any adverse action against him. Llewellyn's interpretation of the writing is insufficient to state a plausible retaliation claim. *See Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (threat to destroy any grievance plaintiff filed was insufficient to state retaliation claim).

The retaliation claim against Captain Black will proceed but the retaliation claims against Aldi and Captain Walsh are dismissed as conclusory.

**Due Process**

Llewellyn alleges that he was denied due process in connection with the July 2016 disciplinary hearing for SRG affiliation, the September 2016 disciplinary hearing for SRG affiliation, and his continuation in the SRG Program in 2018. Although he began as a pretrial detainee, Llewellyn was a sentenced prisoner during the relevant events underlying these

8

claims.[2]

### Disciplinary Hearings

To state a claim under section 1983 for denial of due process at a disciplinary hearing, Llewellyn must show that he possessed an actual liberty interest and that he was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). To demonstrate a liberty interest, Llewellyn must have been subjected to an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Only after a prisoner makes a threshold showing of atypical and significant hardship or at least raises a question of fact as to whether he was deprived of a liberty interest, does the court consider whether the prisoner was afforded the minimum requirements of due process before being subjected to that hardship. *Williams v. Chuttey*, 767 F. App'x 105, 107 (2d Cir. 2019). At a disciplinary hearing, due process requires "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relief upon and the reasons for the disciplinary actions taken." *Id.* at 107-08 (citations and internal quotation marks omitted).

Llewellyn asserts claims relating to two disciplinary hearings on the charge of SRG affiliation, in July and September 2016. He alleges that, as a result of the July hearing, he was

---

[2] Llewellyn was a pretrial detainee prior to July 7, 2016. Although he alleges that he was sent to RHU, issued a disciplinary charge for threats and SRG affiliation, pleaded guilty to that charge of threats, and served the disciplinary sanctions for the charge of threats, he does not allege that any defendant was involved in those events. The only relevant event alleged to have occurred while Llewellyn was a pretrial detainee is that he did not immediately receive a disciplinary hearing on the charge of SRG affiliation when he completed serving his sanctions on July 4, 2016.

placed in the SRG program. He was scheduled to complete the program in January 2018, about eighteen months later. To determine whether conditions of segregated confinement constitute an atypical and significant hardship, the district court considers the duration of the inmate's confinement in segregation as well as the conditions of segregated confinement. *Palmer v. Richard*, 364 F.3d 60, 64 (2d Cir. 2004); see also *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered.").

Llewellyn alleges only that he was admitted to the SRG Program after the hearing in July 2016, and was scheduled to be released on January 25, 2018, a period of about eighteen months. He does not describe the conditions of confinement in the SRG Program. But because both confinement under harsh conditions for a short time and confinement under less harsh conditions for a longer time may be atypical, the Second Circuit has "avoided a bright line rule that a certain period of [restrictive housing] confinement automatically fails to implicate due process rights." *Palmer*, 364 F.3d at 64 (citing *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)). Where a detailed factual record is lacking, the Second Circuit has "affirmed the dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [restrictive housing]— and there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Id.* at 66 (citing cases). As Llewellyn spent eighteen months in the SRG Program, the Court assumes at this juncture that his placement in the Program implicates due process rights.

Llewellyn alleges that he did not receive sufficient notice and opportunity to be heard at

the July 2016 hearing because the defendants refused to identify the evidence against him. "Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). Here, the defendants refused to identify the social media platform where they found the photograph they claimed showed SRG involvement or to show Llewellyn the photograph. Llewellyn also alleges that he was unable to present a defense because defendant Doe 2 refused to interview witnesses, defendant Doe 1 refused to permit him to call witnesses at the hearing, and Lieutenant King told him that she found him guilty before the hearing started.

In *Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001), the Second Circuit concluded that a statement that Taylor was being considered a gang member based on a past admission to outside law enforcement, gang-related tension in the prison housing unit and statements of a confidential informant, failed to provide sufficient notice to enable Taylor to prepare a defense. *Id.* at 193. Similarly, Llewellyn has alleged that he was provided insufficient information to prepare a defense. The Court concludes that these allegations are sufficient to state a plausible due process claim regarding the July 2016 hearing. This claim will proceed against defendants King, Murphy, Doe 1, Doe 2, Papoosha and Aldi.

As to the September 2016 hearing, Llewellyn does not identify the sanctions, if any, imposed. He was already in the SRG Program and he does not identify any additional restrictions placed on him as a result of the September 2016 hearing. The Court cannot determine whether he had a protected liberty interest. However, even if he had a protected liberty interest for which process was due, Llewellyn alleges only that the hearing was held one day beyond the time permitted under prison rules and that a continuance was fabricated to correct

11

that deficiency. A hearing held one day late under DOC protocols does not implicate due process and Llewellyn fails to state a cognizable due process claim regarding the September 2016 disciplinary hearing. The claims against defendants Richardson, Doe 3, and Quiros are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Classification Holdover Decision - 2018

To assert a due process claim in connection with a classification decision, an inmate must show that he had a protected liberty interest in remaining free from that classification. The Court has determined above that Llewellyn had a protected liberty interest in remaining free from the SRG Program. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (applying *Sandin* to due process claim regarding classification); *Arce v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998) (holding that *Sandin* applies to determine whether placement in non-punitive segregation implicates a protected liberty interest).

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court considered the process required to place an inmate in administrative segregation. In this case, it is a question of keeping an inmate in administrative detention when he has otherwise completed his term there. The inmate "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476, *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Wilkinson*, 454 U.S. at 229 (*Hewitt* sets forth the standard of due process for transfer to administrative segregation as some notice of charges and opportunity to be heard).

Llewellyn alleges that defendant Aldi required him to remain in the SRG Program for

12

about three additional months based on uncharged conduct without a hearing or an opportunity to be heard. Defendant Aldi held him over because defendant Aldi believed that Llewellyn should have received a disciplinary charge the prior year. Llewellyn alleges that he received no disciplinary charges or process in connection with the extended stay in the SRG Program. These allegations are sufficient to state a due process claim against defendant Aldi concerning his retention in the SRG Program.

**Eighth Amendment-Sexual Abuse**

Llewellyn alleges that defendant Doe 4 touched him in a sexual manner. Allegations of sexual abuse are cognizable under the Eighth Amendment. *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997). To state an Eighth Amendment claim, Llewellyn must allege facts establishing two components. First, he must allege facts showing that, subjectively, the defendant acted with a "sufficiently culpable state of mind." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (*quoting Hudson v. McMillian*, 503 U.S. 1, 8 (1992))(internal quotation marks omitted). Second, he must allege facts showing that, objectively, the conduct was "harmful enough or sufficiently serious to reach constitutional dimensions." *Id.* (quoting *Hudson*, 503 U.S. at 8). To determine whether sexual contact by a correctional officer violates contemporary standards of decency and is therefore cognizable under the Eighth Amendment, the court must determine "whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257-58.

Llewellyn alleges that Doe 4 touched him sexually during a pat search conducted before Llewellyn went to recreation. Thus, it appears that the contact was incidental to legitimate

duties. Llewellyn also alleges that Doe 4 had touched him previously, but the matter had been addressed. In *Crawford*, the Second Circuit held that a single incident of sexual abuse can be of constitutional magnitude if it is sufficiently severe or serious. *Id.* at 257. However, isolated incidents of sexual abuse, even those involving touching, generally do not violate the Eighth Amendment. *Boddie*, 105 F.3d at 860-61.

Llewellyn has described one touch occurring during a pat search. He alleges no facts suggesting that the touch was severe or serious. The Court considers the Complaint to describe only isolated incidents that do not rise to the level of constitutional violations. The claim against Doe 4 is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Eighth Amendment-Deliberate Indifference to Safety**

In his introductory paragraph, Llewellyn asserts an Eighth Amendment claim for failure to protect him from an inmate assault. To state a claim for deliberate indifference to safety or failure to protect him from harm, Llewellyn must show that the conditions of his confinement posed a substantial risk of serious harm and that the defendants were deliberately indifference to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists when the defendant knows of and disregards an excessive risk to an inmate's safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that the harm would occur and must actually draw that inference).

Llewellyn alleges that Captain Black placed him in a cell with inmate Vega. The following day, inmate Vega assaulted Llewellyn. Shortly thereafter, Llewellyn learned that inmate Vega was not permitted in the recreation yard with other inmate because he was

14

considered "a danger." Doc. No. 1 ¶ 42. Requiring Llewellyn to share a cell with an inmate considered a known danger to other inmates is sufficient to state a plausible claim against defendant Black for deliberate indifference to safety.

**Request for Damages**

Llewellyn seeks damages from the defendants but does not specify whether he names them in individual or official capacity. The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Llewellyn has alleged no facts suggesting that Connecticut has waived this immunity. Accordingly, any claims for damages against the defendants in their official capacities are not cognizable. The request for injunctive relief will proceed against the defendants in their official capacities and the request for damages will proceed against the defendants in their individual capacities.

**Conclusion**

All claims against defendants Richardson, Quiros, Doe 3, Walsh, and Doe 4, and the retaliation claim against defendant Aldi are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). All claims for damages against the defendants in official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

The case will proceed on the retaliation and deliberate indifference to safety claims against Captain Black and the due process claims against defendants Aldi, Murphy, Papoosha, King, Doe 1 and Doe 2.

15

**Orders**

(1) **The Clerk shall** verify the current work addresses for defendants Black, Aldi, Murphy, Papoosha, and King with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants Black, Aldi, Murphy, Papoosha, and King in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) T**he Clerk shall** send Llewellyn a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed on or before March 29, 2020. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed on or before April 29, 2020.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Llewellyn changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Llewellyn must give notice of a new address even if he is incarcerated. Llewellyn should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Llewellyn has more than one pending case, he should indicate all the case numbers in the notification of change of address. Llewellyn should also notify the defendants or the attorney for the defendants of his new address.

(10) Llewellyn shall utilize the Prisoner Efiling Program when filing documents with the court. Llewellyn is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Llewellyn.

**(12) The Court cannot effect service on defendants Doe 1 and Doe 2 without their**

**full names and current work addresses. Llewellyn is directed to obtain this information through discovery or other means available to him, and to file a notice containing the information with the Court. Once Llewellyn has identified these defendants, the Court will order service of the Complaint.**

      **SO ORDERED** at Bridgeport, Connecticut, this 29th day of August 2019.

                                  /s/
                                  Kari A. Dooley
                                  United States District Judge